UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY FRANKOWSKI,

              Plaintiff,              Case Number 15-14183
                                                   Honorable David M. Lawson

v.

KEITH M. NATHANSON and
KEITH M. NATHANSON, PLLC,

              Defendants.
_____/

**OPINION AND ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Kelly Frankowski has filed a complaint alleging that defendant Keith Nathanson and his law firm, Keith Nathanson, PLLC, violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and the Michigan Collection Practices Act (MCPA), Mich. Comp. Laws § 445.251, *et seq.*, by making misleading statements in a debt collection letter. The "debt" the defendants were attempting to collect arose from the failure of the plaintiff's boyfriend (now husband) to pay attorney's fees for personal legal services. The law firm had obtained a judgment for its fees and hired the present defendants to collect it. When the defendants presented an e-check drawn on the plaintiff's joint account with her boyfriend, received under a partial payment order on the judgment, the check bounced. It is the defendants' pursuit of remedies to collect on the bounced check that led to the alleged FDCPA violation. Discovery has closed and each side has filed a motion for summary judgment. The defendant's motion presents a pure legal question: whether the NSF check in this case is a "debt" under the FDCPA and the corresponding state law. The Court finds that it is. The plaintiff contends that the undisputed facts establish a statutory violation. The parties agree on the basic facts of the case, but they differ substantially on the inferences that should

be drawn from them. Because those inferences are material to the elements of the plaintiff's claims, and because deciding which of the competing inferences is more convincing is for the jury and not the Court, the motions for summary judgment will be denied and the case will proceed to trial.

I.

The story begins with Joseph Manson, who is not a party to the case. Manson was Kelly Frankowski's boyfriend, and now is her husband. In 2006, Manson hired the law firm of Allen Brothers, PLLC to represent him and his former wife in a lawsuit. After several years, Manson's lawsuit ended with a small arbitration award for Manson, and a large bill for attorney's fees. In 2010, Allen Brothers PLLC obtained a judgment against Manson for those fees in the amount of $21,955.54.

In 2012, Allen Brothers retained the defendant Nathanson and his law firm to collect the judgment against Manson. It was in that same year that the plaintiff in this case started a personal relationship with Manson, and later they were engaged to be married. In May of 2013, the plaintiff and Manson opened a joint checking account. The plaintiff contends that in 2015, in order to fulfill an installment payment order entered in Michigan's Thirty-sixth District Court, Manson set up an e-pay plan through the joint bank account to issue a monthly e-check to defendant Keith Nathanson, PLLC. It appears that the e-checks began to issue in February 2015 and continued through August 2015. The name on the e-checks was the plaintiff's, and the checks stated that the drafter's signature was on file. The only reference to Manson on the check was on the memo line where it referenced "Joe Manson balance" and then the current amount owed, although Manson, who set up the arrangement on the joint account, presumable was the drafter. All of the checks were applied to the debt owed by Manson.

The plaintiff alleges that Manson recognized that the joint account would have insufficient funds to cover the July 2015 e-check for $1,500 (NSF check). The plaintiff maintains that Manson called defendant Nathanson in an attempt to advise him of the situation and offer to pay the installment by credit card; however, Nathanson allegedly did not return the call.

Nathanson presented the July 2015 e-check for payment on or about July 9, 2015, and, predictably, it was dishonored because there were insufficient funds in the account. The plaintiff alleges that on July 14, 2015 attorney Gary E. Gardner sent an e-mail to defendant Nathanson on Manson's behalf again advising him of the situation and asking him to refrain from presenting the check for payment, and to accept alternate payment. The plaintiff asserts that Nathanson did not respond to the email and that the check was again presented for payment, and again the bank dishonored the check for non-sufficient funds.

On July 27, 2015, defendant Nathanson sent two letters to the plaintiff. The first was a demand letter that followed the language provided in Michigan's dishonored check statute, Michigan Compiled Laws § 600.2952. The letter stated the following:

> Kelly Frankowski
> 22849 Sherry Drive
> Brownstown, MI 48134
>
> RE: Allen Brothers, PLLC v Joseph Manson
> Our File Number: 2439K/2012-K3198
>
> A check, draft, or order for payment of money drawn by you for $1,500.00, check number #995108, drawn July 06, 2015, was returned to our client, Allen Brothers, PLLC, dishonored for: NSF.
>
> This notice is a formal demand for payment of the full amount of the dishonored check, draft, or order plus a processing fee of $25.00 for a total amount of $1,525.00. If you pay this total amount within 7 days, excluding weekends and holidays, after the date this notice was mailed, no further civil action will be taken against you. If you do not pay the $1,525.00 as requested above, but within 30 days after the date

>this notice was mailed you pay the amount of the dishonored check, draft, or order plus a $35.00 processing fee, for a total amount of $1,535.00, no further civil action will be taken against you.
>
>If you fail to pay either amount indicated above, I/we/our client will be authorized by state law to bring a civil action against you to determine your legal responsibility for payment of the check, draft, or order and civil damages: and costs allowed by law.
>
>If you dispute the dishonoring of this check, draft, or order, you should also contact your bank or financial institution immediately.

The second letter was sent, presumably, in an effort to comply with the FDCPA. It stated:

>Kelly Frankowski
>22849 Sherry Drive
>Brownstown, MI 48134
>
>RE: Allen Brothers, PLLC v Joseph Manson
>Our File Number: 2439K/2012-K3198
>
>**PLEASE BE ADVISED THAT THIS CORRESPONDENCE IS AN ATTEMPT TO COLLECT A DEBT, AND ANY AND ALL INFORMATION OBTAINED BY THIS OFFICE WILL BE USED FOR THAT PURPOSE.**
>
>We are writing with reference to an outstanding balance of $1,500.00 for NSF check number 995108 written to Keith M. Nathanson, PLLC.
>
>Unless you, within thirty (30) days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office. If you notify this office in writing within the thirty (30) day period that the debt, or any portion thereof is disputed, this office will obtain a verification of the debt or a copy of a judgment against you, and a copy of such verification or judgment will be mailed to you by this office. In addition, upon your written request within the thirty (30) day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
>We look forward to resolving this matter with you in a timely manner.

After sending the letters, defendant Nathanson drafted a complaint against the plaintiff and on August 18, 2015, generated an accompanying work order. The work order instructed Lisa Ledger, Nathanson's legal assistant, to hold the signed summons and complaint and not file it until

after August 27, 2015. Nonetheless, Ms. Ledger sent the complaint to the Thirty-third District Court the following day on August 19, 2015. The complaint sought $4,750 in damages under the Michigan dishonored check statute. Nathanson contends that he became aware that the complaint had been filed too soon, but determined that such an action was not fatal to the case and therefore decided not to withdraw the complaint.

Nathanson asserts that Ms. Ledger was terminated shortly thereafter for, among other things, sending in the Frankowski complaint early. Ms. Ledger states that although she was informed about work orders in the office, they were rarely if ever used, and that she has no recollection of seeing the work order mentioned in this case. She contends that she was never informed that any of the work she performed on Manson's case was in violation of office policy, and she was never reprimanded for filing the Frankowski complaint too early.

On August 21, 2015, within the thirty-day window announced in the defendants' letters, the plaintiff sent an e-check for $1,000 to the defendants. There was no memo line on the check indicating that the e-check was to correct the dishonored July 2015 check, and there was no reference to the Manson judgment. Nonetheless, Nathanson considered it to be a regular payment on Manson's debt and applied it accordingly.

The state complaint was served on Kelly Frankowski on September 28, 2015. A default judgment was entered on October 29, 2015, but it was subsequently set aside.

Defendants Nathanson and his law firm admit to being debt collectors, as the term is defined in the FDCPA. The defendants state that a total of seven checks had been sent from the plaintiff's joint account and that all of the funds were applied to Manson's debt.

The plaintiff made a number of representations in the state court case about the e-checks. She asserted that she did not set up the e-pay checks nor did she sign the e-checks that were sent to the defendants up to and including the NSF check. She stated that when she received the July 27 letters, she passed them on to Manson with the expectation that he would communicate with the defendants and that the matter would be resolved without further incident. In her state court affirmative defenses, Frankowski stated that the July 2015 e-check was illegal because the check was issued by Joe Manson without Frankowski's knowledge or authority. She stated that Manson committed fraud in using the check, thus nullifying any obligation to pay any monies or penalties to Nathanson. Nonetheless, on June 1, 2016, the plaintiff rectified the bad check by paying the face value of the check and $250 in costs, which saved her from having to pay costs and treble damages under state law. *See* Mich. Comp. Laws § 600.2952(5).

On November 30, 2015, the plaintiff filed a two-count complaint in this Court alleging a violation of the FDCPA, 15 U.S.C. § 1992 *et seq.* (Count I), and a violation of the MCPA, Mich. Comp. Laws § 445.251 *et seq.* (Count II). Discovery closed on July 15, 2016, and each side filed their summary judgment motions thereafter. The Court heard oral argument on October 4, 2016.

II.

The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: the Court "must evaluate each motion on its own merits and view

all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Notably, however, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251-52).

The plaintiff has brought actions under the federal FDCPA and its state-law counterpart. The Michigan statutory provisions relevant to this case track the language in the FDCPA. Courts in this district routinely have held that claims which "'simply duplicate . . . claims under the FDCPA' need not be addressed separately." *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 967 (E.D. Mich. 2012) (quoting *Lovelace v. Stephens & Michaels Assocs.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 7, 2007); *Scheuer v. Jefferson Capital Sys., LLC*, 43 F. Supp. 3d 772, 786 (E.D. Mich. 2014); *see also Parker v. Shermeta, Adams & Von Allmen, P.C.*, No. 13-15067, 2014 WL 5473074, at *2 (E.D. Mich. Oct. 27, 2014); *Brody v. Genpact Servs., LLC*, 980 F. Supp. 2d 817, 819 (E.D. Mich. 2013). Therefore, this discussion will focus on the FDCPA alone.

A plaintiff alleging a claim under 15 U.S.C. § 1692e must establish that (1) the plaintiff is a consumer, as defined by the FDCPA, (2) the debt arises from a transaction primarily for personal,

family or household purposes, (3) the defendant is a debt collector, as that phrase is defined by the FDCPA, and (4) the defendant violated one of the prohibitions listed in § 1692e. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). The parties agree that the first and third elements are not in dispute.

A.

The defendants argue that an NSF check is not a consumer debt within the meaning of the FDCPA, and therefore the plaintiff cannot satisfy the second element of her cause of action. That is a difficult argument for the defendants to win, considering that Congress intended the FDCPA to be "'an extraordinarily broad' remedial statute." *Wise v. Zwicker & Associates, P.C.*, 780 F.3d 710, 713 (6th Cir. 2015) (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). The appellate courts have observed that "Congress incorporated a broad definition of . . . 'debt' . . . into the FDCPA in order to achieve its remedial purpose." *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 167-68 (3d Cir. 2007). "'Because the FDCPA is a remedial statute, [the Court must] construe its language broadly, so as to effect its purpose.'" *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 448 (6th Cir. 2014), *as amended* (Dec. 11, 2014) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a. Courts have recognized that "not all obligations to pay are considered 'debts' subject to the FDCPA." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (citing *Bass v. Stolper, Koritzinsky, Brewster*

*& Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997)). To qualify, the obligation must "involve some kind of business dealing or other consensual obligation." *Ibid.* "The relevant point in time for determining the character of the obligation is when the [obligation] is made, rather than when collection efforts begin." *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293 (6th Cir. 2012) (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874 (7th Cir. 2000). However, "'[t]he FDCPA has no requirement that a service "directly" benefit the consumer.'" *Haddad*, 698 F.3d at 293 (quoting *Thies v. The Law Offices of William A. Wyman*, 969 F. Supp. 604, 608 (S.D. Cal. 1997)).

The defendants argue that the NSF check here was not a debt governed by the FDCPA for two reasons: (1) there was no underlying "consumer transaction" involving the plaintiff that gave rise to the effort to collect on the NSF check, and (2) the plaintiff's debt was the result of tort liability rather than a consensual transaction. The Court addresses each in turn.

1.

Several courts have held that an NSF check can fit the FDCPA's definition of "debt." One of the first was the Seventh Circuit in *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir. 1997). In that case, a consumer wrote a check from a joint bank account to a grocery store that was later dishonored for insufficient funds. *Id.* at 1332. The debt collector initially sought satisfaction of the NSF check from the drafter, but eventually sent a debt collection letter to plaintiff Bass, the other joint account owner of the bank account, who did not draft the check. The collection letter failed to comply with certain FDCPA requirements, but the defendant argued that the Act was not triggered because the NSF check was not a "debt." In rejecting that argument, the court held that the "consumer transaction" creating the debt did not necessarily have

to involve the extension of credit. Instead, the court focused on the statutory text defining a "debt" as "any obligation to pay," and stated that "[s]uch absolute language may not be alternatively read to reference only a limited set of obligations." *Id.* at 1325. Instead, the court was persuaded that "the term 'transaction' is a broad reference to many different types of business dealings between parties, and does not connote any specific form of payment." *Ibid.* Every appellate court to consider this issue since has adopted the *Bass* court's reasoning. *See Charles v. Lundgren & Associates, P.C.*, 119 F.3d 739, 740 (9th Cir. 1997) (adopting *Bass*'s reasoning that an extension of credit should not be read into the FDCPA to qualify as a debt); *Snow v. Jesse L. Riddle, P.C.*, 143 F.3d 1350, 1353 (10th Cir. 1998) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1124 (8th Cir. 1998) (same).

The defendants argue, however, that those cases all involved dishonored checks given in direct payment for a consumer transaction. Here, they say, the dishonored check was intended to pay a judgment, which was not even entered against this plaintiff. And there is language in *Bass* that may support that view. *See Bass*, 111 F.3d at 1325 ("We harbor no doubt that a check evidences the drawer's obligation to pay for the purchases made with the check, and should the check be dishonored, the payment obligation remains."). But that argument ignores the broader transaction. Traced to its source, the check was tendered to pay for "personal" legal "services." *See* 15 U.S.C. § 1692a. It is true that the obligation was reduced to a judgment, but that does not change the character of the obligation. As one court noted, "a transaction's status as a 'debt' under the FDCPA must be determined at the time that the obligation first arose." *F.T.C. v. Check Inv'rs, Inc.*, 502 F.3d 159, 168 (3d Cir. 2007) (citing *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 400 (3d Cir. 2000)). The "debt" was incurred as a result of the purchase of personal legal services, and the NSF check was tendered to pay the obligation "arising out of [that] transaction." *Ibid.*

2.

The defendants also argue that the NSF check could not be a debt because the act of issuing the check was not a consensual act between plaintiff Frankowski and the creditor. Instead, they say, collecting a dishonored check was merely an attempt to recover tort damages.

The defendants base that argument on a line of cases that holds that money owed as a result of a theft does not constitute a consumer transaction within the meaning of the FDCPA, and therefore cannot fit that statute's definition of "debt." That was the holding in *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir.1987), where the court refused to apply the FDCPA in favor of a plaintiff complaining about the tactics used to recover payment for the misappropriation of pirated television signals. Other courts have reached similar conclusions. *See Beauvoir v. Israel*, 794 F.3d 244, 247-48 (2d Cir. 2015) (holding that money owed as a result of theft is not "an obligation or alleged obligation of a consumer to pay money arising out of a transaction" and, therefore, does not constitute a debt for purposes of the FDCPA); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (holding that "damage obligations thrust upon one as a result of no more than her own negligence" is not a debt within the meaning of the FDCPA); *Bass*, 111 F.3d at 1326 (finding theft cannot be the basis of a debt under the FDCPA); *Taylor v. Javitch, Block & Rathbone*, 2012 WL 2375494, at *3-4 (N.D. Ohio June 22, 2012) (default judgment against the plaintiff in state court for her tortious conduct was not debt within meaning of FDCPA); *Shorts v. Palmer*, 155 F.R.D. 172, 176 (S.D. Ohio 1994) (finding no debt under the FDCPA where theft of cigars was the basis of the collection action).

The defendants reason that issuance of the NSF check in this case is more like a theft than a consensual transaction. That reasoning is based in part on Frankowski's fraud defense —

allegedly because Manson did not have permission to issue the check — asserted in the state court action Nathanson brought to collect the NSF check. However, there can be no doubt that the NSF check had been issued by at least one of the account holders — Manson, most likely — and the checking account documents deem the action of one account holder the consensual action of all the joint account holders. *See* Pl.'s Br. in Supp. of Mot., Ex. 4, Advantage One Joint Account Application ("The joint owners of this account hereby agree with each other and with the credit union that all sums now paid into this account, by any or all of said joint owners with all accumulations thereon, are and shall be owned by them jointly." "Any owner of this account may make a withdrawal without the signature of any other owner.").

Courts have rejected attempts to characterize the issuance of NSF checks as a "theft" that would disqualify a transaction for the FDCPA's regulation. In *Federal Trade Commission v. Check Investors, Inc.*, for example, the Third Circuit refused to apply *Zimmerman*'s holding to the circumstance of collecting NSF checks. 502 F.3d at 170. Harkening back to the holding in *Bass*, the court observed that "'Congress still chose not to exempt debt collectors from following the Act if they could prove that the consumer intended his check to be dishonored or accepted credit from a merchant intending default," *ibid.* (quoting *Bass*, 111 F.3d at 1330), and refused to read a fraud exception into the FDCPA. Other courts as well have refused to withhold the FDCPA's protections from a debt created by an NSF check by equating it to a disqualifying "theft." *See*, *e.g.*, *Hawthorne*, 140 F.3d at 1372 ("Unlike torts, [a] bounced checks represent legal obligations to pay. In other words, they constitute evidence of a business dealing, or a 'transaction' under the FDCPA.").

"Congress incorporated a broad definition of . . ."debt" . . . into the FDCPA in order to achieve its remedial purpose. *Check Inv'rs, Inc.*, 502 F.3d at 167-68 (citing 15 U.S.C. § 1692a(5)). Therefore, viewing the events in their entirety, the Court must conclude that the NSF check here amounted to an "obligation" that was made by "a consumer" for the purpose of "pay[ing] money arising out of a transaction" for "services" that were "primarily for personal . . . purposes." *See* 15 U.S.C. § 1692a. The NSF check, therefore, was a "debt" that triggered the protections of the FDCPA.

B.

The FDCPA bans all "false, deceptive, or misleading" debt-collection practices. 15 U.S.C. § 1692e. The plaintiff argues that the letter falsely promising not to file suit for 30 days was a misleading practice as a matter of law, and therefore the undisputed facts entitled her to summary judgment.

"Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011). "The Act protects 'all consumers,' the 'shrewd' as well as the gullible, from practices that would mislead the 'reasonable unsophisticated consumer,' one with some level of understanding and one willing to read the document with some care." *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396 (6th Cir. 2015) (internal citations omitted). "[T]he statute outlaws more than just falsehoods. That is why truth is not always a defense, and that is why even a true statement may be banned for creating a misleading impression." *Ibid.* (internal marks and citations omitted). "In its illustrative (and non-exhaustive) list of violations, the statute prohibits a

false representation of 'the character, amount, or legal status of any debt.'" *Ibid*. (quoting 15 U.S.C. § 1692e(2)(A)).

However, "whether a letter is misleading raises a question of fact." *Id.* at 397 (6th Cir. 2015). "Generally speaking, 'a jury should determine whether the letter is deceptive and misleading.'" *Ibid*. (quoting *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008)). The plaintiff argues that the defendants misrepresented the legal status of her debt in the Bad Check Letter, when they took "further legal action" within the 30-day window, after they asserted that they would not do so. The defendants argue that the language in the Bad Check Letter comes verbatim from Michigan Compiled Laws § 600.2952(2) and therefore cannot be a misrepresentation. Additionally, they insist that the above language does not preclude filing a civil action within the 30-day time period. The letter stated only that no further action would be taken if the matter was resolved in 30 days.

There is no obligation under the Michigan dishonored check statute to send a Bad Check Letter as a prerequisite to commencing a collection action. That letter is required only if the creditor seeks statutory treble damages. *See* Mich. Comp. Laws § 600.2952(1), (4). But the defendants did choose to send the Bad Check letter, and it contained a representation that "no further action" would be taken if the debt was made good within 30 days. And they filed suit before 30 days elapsed.

Would the least sophisticated consumer be mislead by the defendants' implicit representation in the letter that the defendant would not file a lawsuit, for treble damages or otherwise, within 30 days? The plaintiff argues that she was mislead by such a representation and indeed attempted to correct the debt within 30 days by sending the defendants a $1,000 check, which the defendants cashed but did not apply to the amount owed on the NSF check. But that action was taken before

the lawsuit was served, and likely before the plaintiff even was aware that the lawsuit had been filed. In her motion for summary judgment, the plaintiff asks the Court to infer that the misrepresentation was misleading. However, as noted earlier, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party." *Alexander*, 576 F.3d at 557-58 (quoting *Anderson*, 477 U.S. at 251-52). Whether the defendants' letter would mislead the least sophisticated consumer must best resolved by a jury. *Buchanan*, 776 F.3d at 397. Therefore, fact questions on this element preclude granting a motion for summary judgment for either party.

C.

The defendants also argue that any error on their part was a *bona fide* error. Under the FDCPA, "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C.§ 1692k(c). The bona fide error defense applies only to "clerical or factual mistakes," *Jerman v. Carlisle, McNellie, Rini, Kramer, & Ulrich L.P.A.*, 559 U.S. 573, 587 (2010), not to mistakes of law, *Wise*, 780 F.3d at 713.

To qualify for this defense, debt collectors must prove by a preponderance of the evidence that "'(1) the violation was unintentional, (2) the violation was a result of a bona fide error, and (3) the debt collector maintained procedures reasonably adapted to avoid any such error.'" *Litt v. Portfolio Recovery Associates LLC*, 146 F. Supp. 3d 857, 875 (E.D. Mich. 2015) (quoting *Montgomery v. Shermeta, Adams & Von Allmen, P.C.*, 885 F. Supp.2d 849, 857 (W.D. Mich. 2012) (citing *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009)). Here, even

assuming the defendants can make a sufficient showing on the first two elements, they have not made the requisite showing on the third.

The defendants argue that Lisa Ledger's affidavit makes clear that they had procedures in place to prevent violations of the FDCPA. However, Ms. Ledger averred that although during her employment defendant Nathanson showed her how the work order form was to be used in the office, those forms rarely were used, if ever. Ms. Ledger's affidavit calls into question whether the defendants maintained procedures to avoid violations of the FDCPA. Therefore, the defendants have not established clearly that they maintained procedures to avoid violations of the FDCPA and are entitled to the *bona fide* error defense as a matter of law.

III.

The NSF check in this case that the defendants attempted to collect was a "debt" within the meaning of the Fair Debt Collection Practices Act (and the Michigan Collection Practices Act). However, fact questions preclude summary judgment for either party.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment [dkt. #26] and the plaintiff's motion for summary judgment [dkt. #25] are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 19, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 19, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI

---